## Commonwealth *v.* Davis, Appellant.

Argued November 12, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Edward Youngerman,* with him *Aaron A. Brumback,* for appellant.

*Peter F. Cianci,* Assistant District Attorney, with him *Frederick O. Brubaker* District Attorney, for appellee.

OPINION BY WOODSIDE, J., March 20, 1957:

Jack Davis was convicted of fornication and bastardy. Six days before trial he obtained an order from the court permitting a blood grouping test to be made under the Act of May 24, 1951, P. L. 402, 28 PS §306. The results of the blood grouping test were not introduced into evidence because the pathologist making it had advised counsel for defendant that it did not exclude the defendant as a possible father of the child in question.

After the trial the pathologist advised counsel for defendant that at the time when the test was made so much pressure was applied to obtain the results prematurely that he had arrived at an erroneous conclusion, and that when the tests were later reevaluated it was found that the appellant could not have been the father of the infant.

The pathologist set forth the corrected results of his examination in a letter to counsel for the defendant as follows: "The results of the blood groupings on your client, Mr. Jack R. Davis, Carol Schwartz and Baby Schwartz are as follows: Mr. Davis Type A2 MN Positive Rh1; Carol Schwartz Type A1 MN Positive Rh1; Baby Schwartz Type A1 M Positive Rh2.

"On the basis of the ABO-MN groupings, Mr. Davis cannot be excluded as a possible father of Baby Schwartz. However, on the Rh basis, he is definitely excluded.

"In mating of two individuals of Type Rh1, the offspring of such a mating must belong to one of the types Rh1, Rh', Rh0 and Rh. The blood grouping of children Rh2, Rh", Rh1, Rh2, and Rh' Rh" cannot occur.

"Since the baby's blood type in this particular instance was Rh2, then I feel certain that Mr. Davis can be excluded as the possible father."

Counsel for the defendant upon learning of this four days after the trial, filed a motion for a new trial the same day. The learned court below refused to grant this motion. We think a new trial should be granted.

The defendant was arrested November 6, 1953; the child was born May 14, 1954; the blood grouping test ordered June 15, 1954; the trial held June 21, 1954; and the motion for a new trial made June 25, 1954.

The defendant cannot be charged with any undue delay in applying for the blood grouping test or in moving for a new trial upon learning of the error. There, of course, must be finality in judicial proceedings, and new trials cannot be granted every time a witness admits having given erroneous testimony, but under the circumstances of this case justice requires that the defendant be given an opportunity to present this extremely important evidence. Where the defendant acted promptly to secure a blood grouping test and an evident error in evaluating the tests was promptly discovered and called to the court's attention, to deny a new trial would be to permit an injustice to be perpetrated upon the defendant.

Appellee and the court below rely on *Commonwealth v. Dean,* 172 Pa. Superior Ct. 415, 94 A. 2d 59 (1953). In that case the defendant did not petition the court for a blood grouping test until thirty-eight days after final judgment. All that case stands for is that the application for the blood grouping test must be made prior to trial, since the legislature contemplated the use of the evidence at the trial. In the case before us, however, the defendant did make this application and through no fault of his own, obtained an erroneous report which was promptly thereafter corrected. Under these circumstances justice requires the granting of a new trial.

Judgment of sentence reversed and a new trial granted.